| UNITED STATES DISTRICT COURT | EASTERN DISTRICT OF TEXAS |
|---|---|

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | § | |
| | § | |
| *versus* | § | CASE NO. 4:15-CR-88(11) |
| | § | |
| MANUEL CISNEROS | § | |

**MEMORANDUM AND ORDER**

Pending before the court is Defendant Manuel Cisneros's ("Cisneros") Motion for Modification of Sentence Seeking Compassionate Release (#820), wherein he requests that the court grant him home confinement due to the threat of Coronavirus Disease 2019 ("COVID-19"). The Government opposes the motion (#826). After conducting an investigation, United States Probation and Pretrial Services ("Probation") recommends denying the motion. Having considered the motion, the Government's response, Probation's recommendation, the record, and the applicable law, the court is of the opinion that the motion should be denied.

I.  Background

Cisneros's offense of conviction stems from his involvement in a drug-trafficking conspiracy. On February 11, 2016, a federal grand jury in the Eastern District of Texas returned a Third Superseding Indictment charging Cisneros and 18 others in Count 1 with Conspiracy to Possess With the Intent to Manufacture and Distribute Cocaine, in violation of 21 U.S.C. § 846. Subsequently, on January 31, 2017, Cisneros pleaded guilty to the charged offense pursuant to a non-binding plea agreement. On July 7, 2017, the court sentenced him to 97 months' imprisonment, followed by a three-year term of supervised release. Cisneros is currently housed at the Federal Correctional Institution Beaumont Low, located in Beaumont, Texas ("FCI Beaumont Low"). His projected release date is May 2, 2024.

II.      Analysis

On December 21, 2018, President Trump signed the First Step Act of 2018 into law. *See* First Step Act of 2018, Pub. L. No. 115-391, 132 Stat. 5194. The Act, in part, amended 18 U.S.C. § 3582(c), which gives the court discretion, in certain circumstances, to reduce a defendant's term of imprisonment:

> The court, upon motion of the Director of the Bureau of Prisons ("BOP"), or upon motion of the defendant after the defendant has fully exhausted all administrative rights to appeal a failure of the [BOP] to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier, may reduce the term of imprisonment (and may impose a term of probation or supervised release with or without conditions that does not exceed the unserved portion of the original term of imprisonment), after considering the factors set forth in section 3553(a) to the extent that they are applicable, if it finds that extraordinary and compelling reasons warrant such a reduction; or the defendant is at least 70 years of age, has served at least 30 years in prison, pursuant to a sentence imposed under section 3559(c), for the offense or offenses for which the defendant is currently imprisoned, and a determination has been made by the Director of the [BOP] that the defendant is not a danger to the safety of any other person or the community, as provided under section 3142(g); and that such a reduction is consistent with applicable policy statements issued by the Sentencing Commission . . . .

18 U.S.C. § 3582(c)(1)(A). This provision is commonly referred to as "compassionate release."

Prior to the First Step Act, only the Director of the BOP could file a motion seeking compassionate release. *See United States v. Franco*, 973 F.3d 465, 467 (5th Cir. 2020) ("Prior to the passage of the First Step Act . . . courts lacked the power to adjudicate motions for compassionate release."); *Tuozzo v. Shartle*, No. 13-4897, 2014 WL 806450, at *2 (D.N.J. Feb. 27, 2014) (denying petitioner's motion for compassionate release because no motion for his release was filed by the BOP). The First Step Act amended § 3582(c) by providing a defendant the means to appeal the BOP's decision not to file a motion for compassionate release on the defendant's behalf. *United States v. Cantu*, 423 F. Supp. 3d 345, 347 (S.D. Tex. 2019); *United States v. Bell*,

2

No. 3:93-CR-302-M, 2019 WL 1531859, at *1 (N.D. Tex. Apr. 9, 2019). The plain language of the statute, however, makes it clear that the court may not grant a defendant's motion for compassionate release unless the defendant has complied with the administrative exhaustion requirement. 18 U.S.C. § 3582(c)(1)(A); *Franco*, 973 F.3d at 467 (holding that the statutory requirement that a defendant file a request with the BOP before filing a motion for compassionate release in federal court "is *not* jurisdictional but that it *is* mandatory"); *United States v. Alam*, 960 F.3d 831, 833 (6th Cir. 2020) ("Even though [the] exhaustion requirement does not implicate [the court's] subject-matter jurisdiction, it remains a mandatory condition."); *United States v. Raia*, 954 F.3d 594, 597 (3d Cir. 2020) ("[T]he exhaustion requirement . . . presents a glaring roadblock foreclosing compassionate release."). Thus, before seeking relief from the court, a defendant must first submit a request to the warden of his facility to move for compassionate release on his behalf and then either exhaust his administrative remedies or wait for the lapse of 30 days after the warden received the request. 18 U.S.C. § 3582(c)(1)(A); *Franco*, 973 F.3d at 467 ("The text . . . outlines two routes a defendant's motion can follow to be properly before the court. Both routes begin with the defendant requesting that 'the [BOP]' 'bring a motion on the defendant's behalf.'"); *United States v. Harris*, 812 F. App'x 106, 107 (3d Cir. 2020); *United States v. Springer*, 820 F. App'x 788, 791 (10th Cir. 2020) (defendant "was required to request that the BOP file a compassionate-release motion on his behalf to initiate his administrative remedies" (citing *Raia*, 954 F.3d at 595)); *Alam*, 960 F.3d at 833-34; *United States v. Soliz*, No. 2:16-190-3, 2020 WL 2500127, at *3 (S.D. Tex. May 14, 2020) ("§ 3582(c)(1)(A) does not provide this Court with the equitable authority to excuse [defendant's] failure to exhaust his

administrative remedies or to waive the 30-day waiting period." (quoting *United States v. Reeves*, No. 18-00294, 2020 WL 1816496, at *2 (W.D. La. Apr. 9, 2020))).

Here, Cisneros states that he "requested a reduction in sentence based on concerns about COVID-19 to the Warden at El Reno FCI, where he [was formerly] housed." On June 1, 2020, Warden S. R. Grant denied Cisneros's request, noting that

> The BOP is taking extraordinary measures to contain the spread of COVID-19 and treat any affected inmates. We recognize that [he], like all of us, [has] legitimate concerns and fears about the spread and effects of the virus. However, [his] concern about being potentially exposed to, or possibly contracting, COVID-19 does not currently warrant an early release from [his] sentence.

Although Cisneros may have complied with the exhaustion requirement before filing the instant motion, nothing in his motion indicates that extraordinary and compelling reasons exist to modify his term of imprisonment.

Congress did not define "extraordinary and compelling." Rather, it elected to delegate its authority to the United States Sentencing Commission ("the Commission"). *See* 28 U.S.C. § 994(t) ("The Commission, in promulgating general policy statements regarding the sentencing modification provisions in section 3582(c)(1)(A) of title 18, shall describe what should be considered extraordinary and compelling reasons for sentence reduction, including the criteria to be applied and a list of specific examples."); *see also* U.S. SENTENCING GUIDELINES MANUAL § 1B1.13 (U.S. SENTENCING COMM'N 2018) ("USSG"). In Application Note 1 to § 1B1.13 of the USSG, the Commission defined "extraordinary and compelling reasons" to include the following four categories of circumstances: (i) certain medical conditions of the defendant; (ii) the defendant is 65 years or older and meets other requirements; (iii) the defendant's family has specified needs for a caregiver; and (iv) other reasons in the defendant's case that establish an

extraordinary and compelling reason. The court must also consider the factors set forth in 18 U.S.C. § 3553(a),[1] as applicable, and find that the sentence modification is consistent with the policy statements issued by the Commission. 18 U.S.C. § 3582(c)(1)(A). The policy statement regarding compassionate release requires a determination that "the defendant is not a danger to the safety of any other person or to the community." U.S.S.G. § 1B1.13(2).

    A.    <u>Medical Condition</u>

In the instant motion Cisneros, age 32, contends that he is eligible for compassionate release due to his medical condition, specifically that he suffers from Type 2 diabetes mellitus. The USSG provides that extraordinary and compelling reasons exist regarding a defendant's medical condition when the defendant is "suffering from a terminal illness (*i.e.*, a serious and advanced illness with an end of life trajectory)" or when a defendant is "suffering from a serious physical or medical condition," "suffering from a serious functional or cognitive impairment," or "experiencing deteriorating physical or mental health because of the aging process, that substantially diminishes the ability of the defendant to provide self-care within the environment of a correctional facility and from which he or she is not expected to recover." U.S.S.G. § 1B1.13 cmt. n.1(A).

---

[1] Section 3553(a) directs courts to consider: the nature and circumstances of the offense and the defendant's history and characteristics; the need to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense; the need to deter criminal conduct; the need to protect the public; the need to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner; the kinds of sentences and sentencing ranges established for defendants with similar characteristics under applicable USSG provisions and policy statements; any pertinent policy statement of the Commission in effect on the date of sentencing; the need to avoid unwarranted disparities among similar defendants; and the need to provide restitution to the victim. 18 U.S.C. § 3553(a).

Here, according to Cisneros's Presentence Investigation Report ("PSR"), prepared in 2017, Cisneros informed Probation that he was diagnosed with Type 2 diabetes in 2011, but that he was not insulin dependent. At the time his PSR was prepared, Cisneros reported that he was prescribed Januvia to lower his blood sugar levels. Cisneros's BOP medical records confirm that he is actively monitored and is currently prescribed atorvastatin, glipizide, lisinopril, metformin, and aspirin to treat his Type 2 diabetes. According to his BOP medical records, Cisneros has repeatedly refused treatment with insulin, although it lowered his blood sugars, as noted in medical records dated January 28, 2020, and February 5, 2020. During a January 28, 2020, clinical encounter, a BOP medical provider noted with regard to Cisneros that "[t]his inmate does not want treatment for his diabetes. He insists that he can 'manage this on my own. I see the other guys here. They do the wrong thing.'"

Although it is apparent from his medical records that Cisneros has been counseled by medical personnel about the importance of taking his medications and adjusting his diet, a note authored by Spencer Zeavin, M.D., on March 26, 2020, reveals that Cisneros failed to take his medication for an entire week and that "[h]e has been eating cinnamon toast crunch, ice cream, and other sweets from commissary." Nevertheless, as of June 10, 2020, Cisneros's hemoglobin A1C levels had improved to 6.4 from a recorded 9.6 on February 4, 2020, denoting that he was only borderline diabetic. Moreover, Cisneros is classified as a Care Level 1 inmate (healthy or simple chronic care), indicating that he is generally healthy with only limited medical needs that can be managed by clinical evaluations every six to twelve months.

Hence, Cisneros's medical summary does not meet the criteria listed above. None of Cisneros's medical conditions is terminal or substantially diminishes his ability to provide self-

care.  Indeed, as reflected in BOP records, dated November 16, 2020, Cisneros is housed in general population, has no medical restrictions, has regular duty work assignments, and is cleared for food service.  His current work detail is in the dairy department.  Accordingly, Cisneros has failed to establish that a qualifying medical condition exists that would constitute extraordinary and compelling reasons to reduce his sentence.  Even if Cisneros's medical condition constituted an extraordinary and compelling reason under § 3582(c)(1)(A), "compassionate release is discretionary, not mandatory, and [may] be refused after weighing the sentencing factors of 18 U.S.C. § 3553(a)."  *United States v. Chambliss*, 948 F.3d 691, 693 (5th Cir. 2020).  Where, as here, a prisoner has engaged in "severe" criminal conduct, the district court has discretion to deny compassionate release after weighing the evidence.  *Id.* at 693-94.

      B.     "Other" Reasons

Cisneros's request for compassionate release potentially falls into the fourth, catch-all category of "other" extraordinary and compelling reasons, which specifically states that the Director of the BOP shall determine whether "there exists in the defendant's case an extraordinary and compelling reason other than, or in combination with, the reasons described in subdivisions (A) through (C)."  U.S.S.G. § 1B1.13 cmt. n.1(D).  Although Subdivision D is reserved to the BOP Director, the Commission acknowledged, even before the passage of the First Step Act, that courts are in the position to determine whether extraordinary and compelling circumstances are present.  *United States v. Beck*, 425 F. Supp. 3d 573, 583 (M.D.N.C. 2019) ("Read in light of the First Step Act, it is consistent with the previous policy statement and with the Commission guidance more generally for courts to exercise similar discretion as that previously reserved to the BOP Director in evaluating motions by defendants for compassionate release."); *see Cantu*, 423

F. Supp. 3d at 352 ("[T]he correct interpretation of § 3582(c)(1)(A) . . . is that when a defendant brings a motion for a sentence reduction under the amended provision, the Court can determine whether any extraordinary and compelling reasons other than those delineated in U.S.S.G. § 1B1.13 cmt. n.1(A)-(C) warrant granting relief.").

In the case at bar, there is no indication that the BOP Director made a determination regarding the presence of extraordinary and compelling reasons with respect to Cisneros for any "other" reason. In exercising its discretion, the court, likewise, finds that no extraordinary and compelling reasons exist in relation to Cisneros's situation. Cisneros expresses concerns regarding the spread of COVID-19 among the prison population. Nevertheless, as of January 11, 2021, the figures available at www.bop.gov list 29 inmates (out of a total inmate population of 1,660) and 2 staff members at FCI Beaumont Low as having confirmed positive cases of COVID-19, 1,136 inmates and 4 staff members who have recovered, and 1 inmate who has succumbed to the disease. Thus, it appears that the facility where Cisneros is housed is handling the outbreak appropriately and providing adequate medical care.

Although Cisneros expresses legitimate concerns regarding COVID-19, he does not establish that the BOP cannot manage the outbreak within his correctional facility or that the facility is specifically unable to treat Cisneros, if he were to contract the virus and develop COVID-19 symptoms, while incarcerated. *See Raia*, 954 F.3d at 597 ("[T]he mere existence of COVID-19 in society and the possibility that it may spread to a particular prison alone cannot independently justify compassionate release, especially considering BOP's statutory role, and its extensive and professional efforts to curtail the virus's spread."); *United States v. Banks*, No. CR 15-0080-02, 2020 WL 6839267, at *4 (W.D. La. Nov. 20, 2020) ("This Court cannot equate the

generalized fear of COVID-19 to an extraordinary and compelling reason to support compassionate release, nor will it undermine BOP's criteria to determine eligibility for sentence reductions or home confinement."); *United States v. Woods*, No. 4:11-CR-106-SDJ, 2020 WL 6391591, at *4 (E.D. Tex. Nov. 2, 2020) (noting that "courts have concluded that an inmate's concerns about risks associated with the spread of COVID-19 are not consistent with the policy statement of the Commission as required by Section 3582(c)(1)(A)"); *United States v. Vasquez*, No. CR 2:18-1282-S-1, 2020 WL 3000709, at *3 (S.D. Tex. June 2, 2020) ("General concerns about the spread of COVID-19 or the mere fear of contracting an illness in prison are insufficient grounds to establish the extraordinary and compelling reasons necessary to reduce a sentence." (quoting *United States v. Koons*, 455 F. Supp. 3d 285, 292 (W.D. La. 2020))); *United States v. Clark*, 451 F. Supp. 3d 651, 656 (M.D. La. 2020) (finding the defendant had failed to present extraordinary and compelling reasons to modify his prison sentence because he "does not meet any of the criteria set forth by the statute" and he "cites no authority for the proposition that the fear of contracting a communicable disease warrants a sentence modification"). Furthermore, contracting the virus while incarcerated, even in conjunction with preexisting health conditions, is insufficient to establish exceptional and compelling circumstances warranting compassionate release. *See United States v. Jackson*, No. 3:16-CR-196-L-1, 2020 WL 4365633, at *2 (N.D. Tex. July 30, 2020) (finding that defendant had failed to present extraordinary and compelling reasons for compassionate release despite suffering from previous underlying health conditions and testing positive for COVID-19). Thus, Cisneros has failed to establish that a qualifying medical condition or other reasons exist that would constitute extraordinary and compelling reasons to warrant his release to home confinement.

The court further finds that compassionate release is not warranted in light of the applicable factors set forth in § 3553(a). *See* 18 U.S.C. § 3582(c)(1)(A) (requiring courts to consider the § 3553(a) factors before granting compassionate release); *Chambliss*, 948 F.3d at 693-94. Cisneros's offense of conviction entails his participation in a large-scale, international drug-trafficking conspiracy in which he was held responsible for the distribution of between 15 and 50 kilograms of cocaine. Cisneros supplied coconspirators with kilogram quantities of cocaine from various sources for distribution to others in the Eastern and Northern Districts of Texas. As part of the conspiracy, Cisneros received kilogram quantities of cocaine in Dallas, Texas, delivered by couriers dispatched from the Texas-Mexico border area, from which he distributed the cocaine to customers in Northeast Texas.

Cisneros has a history of poly-substance abuse. In fact, Cisneros violated his conditions of pretrial release when he tested positive for marijuana on June 7, 2017. Cisneros reported that beginning at age 14, he smoked up to 3 grams of marijuana daily. Cisneros also consumed alcohol weekly, as well as ecstasy and cocaine occasionally. At the time of sentencing, he had a pending charge for possession of marijuana in Dallas County stemming from his arrest on February 1, 2013. According to the offense report, police officers responded to an area in reference to a robbery and conducted a traffic stop on the vehicle Cisneros was driving, in which officers discovered an unrestrained 15-month-old child. A search of the vehicle revealed more than 10 grams of marijuana in a backpack that also contained baby items and $2,645 in currency. In view of the circumstances surrounding Cisneros's offense of conviction and his history of poly-substance abuse, the court cannot conclude that he would not pose a danger to any other person or to the community, if released from prison.

Moreover, the BOP has instituted a comprehensive management approach that includes screening, testing, appropriate treatment, prevention, education, and infection control measures in response to COVID-19. In response to a directive from the former United States Attorney General in March 2020, the BOP immediately began reviewing all inmates who have COVID-19 risk factors, as described by the Centers for Disease Control and Prevention, for the purpose of determining which inmates are suitable for placement on home confinement. *See United States v. Collins*, No. CR 04-50170-04, 2020 WL 1929844, at *3 (W.D. La. Apr. 20, 2020). The BOP notes that inmates need not apply to be considered for home confinement, as this is being done automatically by case management staff. Since March 26, 2020, the BOP has placed 20,125 inmates on home confinement. The March 2020 directive is limited to "eligible at-risk inmates who are non-violent and pose minimal likelihood of recidivism and who might be safer serving their sentences in home confinement rather than in BOP facilities." *United States v. Castillo*, No. CR 2:13-852-1, 2020 WL 3000799, at *3 (S.D. Tex. June 2, 2020). The BOP has the exclusive authority to determine where a prisoner is housed; thus, the court is without authority to order home confinement. 18 U.S.C. § 3621(b); *United States v. Donnell*, ___ F. Supp. 3d ___, No. 4:10-CR-65-SDJ-CAN, 2020 WL 5939095, at *7 (E.D. Tex. Aug. 4, 2020); *Ambriz v. United States*, 465 F. Supp. 3d 630, 633 (N.D. Tex. 2020); *United States v. Miller*, No. 2:17-CR-015-D (02), 2020 WL 2514887, at *1 (N.D. Tex. May 15, 2020) ("[N]either the CARES Act nor the First Step Act authorizes the court to release an inmate to home confinement.").

In his Memorandum to the BOP dated March 26, 2020, former Attorney General Barr acknowledges that the Department of Justice ("DOJ") has an obligation to protect both BOP personnel and inmates. He also notes that the DOJ has the responsibility of protecting the public,

11

meaning that "we cannot take any risk of transferring inmates to home confinement that will contribute to the spread of COVID-19 or put the public at risk in other ways." The Attorney General issued a subsequent Memorandum to the BOP on April 3, 2020, in which he emphasizes that police officers protecting the public face an increased risk from COVID-19 and cannot avoid exposure to the virus, with their numbers dwindling as officers who contract the virus become ill or die or need to recover or quarantine to avoid spreading the disease. Accordingly, he cautions:

> The last thing our massively over-burdened police forces need right now is the indiscriminate release of thousands of prisoners onto the streets without any verification that those prisoners will follow the laws when they are released, that they have a safe place to go where they will not be mingling with their old criminal associates, and that they will not return to their old ways as soon as they walk through the prison gates.

As the court noted in *United States v. Preston*, "[t]he best predictor of how [Defendant] will behave if he were to be released is how he behaved in the past, and his track record is a poor one." No. 3:18-CR-307-K, 2020 WL 1819888, at *4 (N.D. Tex. Apr. 11, 2020) (quoting *United States v. Martin*, 447 F. Supp. 3d 399, 403 (D. Md. 2020)). Here, there is no reason to believe that Cisneros would not revert to his drug-dealing and drug-abusing activities if released from prison at this juncture.

In short, Cisneros has failed to satisfy his burden of showing the necessary circumstances to warrant relief under the statutory framework to which the court must adhere. *See United States v. Dodge*, No. 17-323-01, 2020 WL 3668765, at *5 (W.D. La. July 6, 2020) (stressing that "the rampant spread of the coronavirus and the conditions of confinement in jail, alone, are not sufficient grounds to justify a finding of extraordinary and compelling circumstances"); *Koons*, 455 F. Supp. 3d at 291-92 (same). As the court observed in *Koons*, rejecting the notion that it has "carte blanche" authority to release whomever it chooses, "[t]he Court cannot release every

prisoner at risk of contracting COVID-19 because the Court would then be obligated to release every prisoner." *Dodge*, 2020 WL 3668765, at *6; *Koons*, 455 F. Supp. 3d at 292.

III.    Conclusion

Consistent with the foregoing analysis, Cisneros's Motion for Modification of Sentence Seeking Compassionate Release (#820) is DENIED.

SIGNED at Beaumont, Texas, this 12th day of January, 2021.

_____
MARCIA A. CRONE
UNITED STATES DISTRICT JUDGE